COOS, MAY TERM, 1818.

---

## HEMAN BEACH *versus* JOHN KEZAR.

Trade with the enemy during war, is illegal. One who knowingly aids another in such trade, cannot recover for his services.

THIS was an action of assumpsit, for keeping at Canaan, (Vt.) six oxen, six weeks, in the year 1813. The cause was tried here at the last term on the general issue, and the defence placed upon two grounds:

*First.* That the cattle during the above time belonged to Beach himself.

*Secondly.* That if Beach was not the owner, they belonged to one Bailey, who had engaged to receive them at

*Beach's*, near the frontier : that *Bailey*, from the commencement of the late war till the time of the purchase of the oxen, had resided in *Canada*, and been employed in procuring beef for the enemy's troops : that he had made *Canaan* a rendezvous for the cattle obtained in the *United States*, and, when opportunity offered, drove them across the lines : that *Beach* knew all these circumstances, and kept the oxen with full knowledge of their destination, and with an express view to facilitate their passage to the *British* troops ; and that, after six weeks had expired, a circumstance occurred which enabled *Bailey* and his associates to drive the cattle into *Canada* without their being seized.

Much contradictory evidence was offered as to these points ; and the jury were instructed, that if the defendant had supported either of them, he was entitled to their verdict ; and, if given in his favor, that they might distinguish upon which point it was founded.

A verdict was returned for the defendant on the last point, and was received, subject to future consideration on the propriety of the directions that were given to the jury.

*Pearson, Barnard,* (Vt.) and *Fletcher,* for the plaintiff.

*Swan,* for the defendant.

WOODBURY, J., delivered the opinion of the court.

No principle hath been longer settled than that *ex dolo malo, non oritur actio.* (1.)

(1) Cow. 843.
2 Wils. 32.

A person, claiming the assistance of the law in a particular case, must not, in that very case, have violated the law. This rule is not established to aid defendants, for they are often more criminal than plaintiffs. But it is introduced on account of public policy, which presents every possible discouragement to the formation of illegal contracts ; and, if formed, interposes all practicable impediments to their being fulfilled.

It is too late to contend, that direct trade with the enemy during war is not illegal ; and, that to furnish them with

provisions is not a crime of the most flagrant enormity. *Un.
St. Const. Treason.*—1 *Gal.* 303.—1 *Com. C.* 36.—8 *D.
& E.* 548.—1 *Rob. Ad. Rep.* 196.

The authorities also are numerous, that a person who
sells articles, knowing they are to be converted to an unlaw-
ful purpose, and intending to aid the accomplishment of that
purpose, cannot recover for their value. 1 *East* 97.—4 *D.
& E.* 466.—5 *ditto* 599, *Waywell* vs. *Reed.*

It seems equally well settled, that a contract to pay for
past or future services, employed in the promotion of illegal
objects, cannot be enforced. 7 *D. & E.* 630.—1 *Peer. Wms.*
151. In *Clugas* vs. *Penaluna,* 4 *D. & E.* 468, *Buller, J.,*
in a case somewhat analogous to the present one, observes,
" here the plaintiff was assisting in the act of smuggling,
" by means of packing the goods ; for the spirits were deliv-
" ered in ankers, which are used for the purpose of smug-
" gling ; and if he takes part in the transaction it taints the
" whole of it." *Vide etiam,* 3 *D. & E.* 457.—5 *ditto* 599.
—10 *Mass. Rep.* 277.

In *Littlefort et al.* vs. *Tenant,* 1 *Bos. & Pul.* 555, where
articles had been supplied, knowing that they were to be
exported contrary to law, *Eyre, J.,* remarks, that " very
" probably those who are remotely concerned in furnishing
" the supply, may not be directly within the scope of the
" act. But it will not follow that their contracts will be
" valid. Upon the principles of common law the considera-
" tion of every valid contract must be meritorious." " But
" the man who sold arsenic to one who, he knew, intended
" to poison his wife with it, would not be allowed to main-
" tain an action on his contract. The consideration of the
" contract, in itself good, is there tainted with turpitude,
" which destroys the whole merit of it. Other cases, where
" the means of transgressing a law are furnished with know-
" ledge that they are intended to be used for that purpose,
" will differ in shade more or less from this strong case ; but
" the body of the color is the same in all. No man ought

COOS, MAY TERM, 1818.                        187

Beach
vs.
Kezar.

"to furnish another with the means of transgressing the "law, knowing that he intends to make that use of them."

The jury have here found that the hay, grain and barn-room, with the services performed in tending the cattle, were all furnished under full knowledge in the plaintiff that the cattle were destined to the enemy, and with an express design in him to facilitate their passage over the lines, by keeping them on his farm in the vicinity of the frontier, till *Bailey* could call for them with safety.

The plaintiff's claim, then, arises *ex turpi causa ;* from knowingly and designedly furnishing another with means to transgress the law.

Were those who minister in the temple of justice compelled by law to assist in adjusting a concern of this description, it would be a task in the highest degree odious and disgraceful.

Let judgment be entered on the verdict.